Neal R. Marder (SBN: 126879)
nmarder@winston.com
Micol O. Sordina (SBN: 245659)
msordina@winston.com
Jason C. Hamilton (SBN: 267968)
jhamilton@winston.com
**Winston & Strawn LLP**
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:   (213) 615-1750

Ronald Y. Rothstein (*pro hac vice*)
rrothstein@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone:   (312) 558-5600
Facsimile:   (312) 558-5700

Attorneys for Defendant
THE J.M. SMUCKER COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCINA CALDERA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | Case No. 2:12-CV-04936 GHK (VBKx)<br>Pleading Type: Class Action<br><br>**THE J.M. SMUCKER COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL LITIGATION AGAINST HER COUNSEL; REQUEST FOR SANCTIONS**<br><br>Hearing Date: June 3, 2013<br>Time: 9:30 a.m.<br>Courtroom: 650<br>Judge: Hon. George H. King<br>Action Filed: June 18, 2010 |

*Winston & Strawn LLP*
*333 S. Grand Avenue*
*Los Angeles, CA 90071-1543*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...........................................................................1

II.    FACTUAL BACKGROUND ..........................................................2

     A.     The Weston Firm and Its Campaign Against Smucker ............................2

     B.     The Website..................................................................2

     C.     The San Diego Action ..............................................5

     D.     The Ohio Action .........................................................6

     E.     The Motion ..................................................................6

III.   PLAINTIFF'S MOTION IS PROCEDURALLY DEFECTIVE.......................7

     A.     Plaintiff Is Not A Party To The Ohio Action And Thus Lacks Standing To Bring The Motion .................................7

     B.     The Motion Is Brought In The Wrong Court ...........................7

IV.   THERE IS NO VALID BASIS FOR THIS COURT TO ENJOIN SMUCKER FROM PROSECUTING THE OHIO ACTION ........................9

     A.     Anti-Suit Injunctions Are Extremely Rare And Only Granted In "Extraordinary Circumstances" Not Present Here......................9

     B.     Plaintiff Comes Nowhere Close To Showing That Smucker Is A "Vexatious Litigant" That Would Trigger The Court's Power To Restrict Smucker's Access to Courts Under the All Writs Act ..............12

         1.     Plaintiff Cannot Insulate Key Witnesses From The Weston Firm From Appearing For Deposition In The Ohio Action .........15

     C.     There Is No Basis Under Rule 23 To Enjoin The Ohio Action ..............17

     D.     The Traditional Injunction Factors Are Irrelevant And In Any Event Not Satisfied ...............................................17

         1.     Misstatements On Plaintiff's Website Are Not Protected By The Litigation Privilege .................................19

V.     THE COURT SHOULD ISSUE SANCTIONS AGAINST PLAINTIFF FOR SMUCKER'S COSTS IN OPPOSING THIS BASELESS MOTION .............24

VI.   CONCLUSION ...........................................................................25

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alabama v. United States Army Corps of Eng'rs,*
424 F.3d 1117 (11th Cir. 2005) .................................................................. 18, 19

*Alltrade, Inc. v. Uniweld Products, Inc.,*
946 F.2d 622 (9th Cir. 1991) .......................................................................... 8

*Am. Dental Ass'n v. Khorrami,*
2004 WL 3486525 (C.D. Cal. Jan. 26, 2004) .................................................. 20

*Amoco Prod. Co. v. Vill. of Gambell,*
480 U.S. 531 (1987) ...................................................................................... 18

*Apple Inc. v. Samsung Elecs. Co., Ltd,*
282 F.R.D. 259 (N.D. Cal. Apr. 4, 2012) .................................................. 15, 16

*Ball v. D'Lites Enters., Inc.,*
65 So. 3d 637 (Fla. App. 2011) ...................................................................... 20

*Baum v. Blue Moon Ventures, LLC,*
513 F.3d 181 (5th Cir. 2008) ........................................................................... 8

*Benoza v. Target Personnel Servs.,*
1997 WL 446232 (N.D. Cal. July 29, 1997) ......................................... 13, 14, 15

*Bergh v. State of Washington,*
535 F.2d 505 (9th Cir. 1976) ............................................................................ 9

*Brown v. Wireless Networks, Inc.,*
2008 WL 1859990 (N.D. Cal. Apr. 24, 2008).................................................. 20

*Cargill Inc. v. Progressive Dairy Solutions, Inc.,*
2008 WL 2235354 (E.D. Cal. May 29, 2008)............................................. 21, 22

*Cedars-Sinai Med. Ctr. v. Shalala,*
125 F.3d 765 (9th Cir. 1997) ............................................................................ 8

*Cell Therapeutics, Inc. v. Lash Group, Inc.,*
586 F.3d 1204 (9th Cir. 2009) ........................................................................ 23

ii

*Cenergy Corp. v. Bryson Oil & Gas P.L.C.*,
   657 F. Supp. 867 (D. Nev. 1987) ........................................................................8

*Church of Scientology of Cal. v. U.S. Dep't of Army*,
   611 F.2d 738 (9th Cir. 1979) ..........................................................................22

*Cole v. Patricia A. Meyer & Assocs., APC*,
   206 Cal. App. 4th 1095 (2012) ......................................................................21

*Corinthian Colleges, Inc. v. Price*,
   2005 WL 1199069 (Cal. App. May 20, 2005) ..........................................21, 22

*De Long v. Hennessey*,
   912 F.2d 1144 (9th Cir. 1990) ..............................................................12, 13, 15

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) ......................................................................11, 12

*Del Mar Avionics v. Quinton Instruments Co.*,
   645 F.2d 832 (9th Cir. 1981) ............................................................................9

*Doran v. Vicorp Rests., Inc.*,
   407 F. Supp. 2d 1115 (C.D. Cal. 2005) ..........................................................14

*Earth Island Inst. v. Carlton*,
   626 F.3d 462 (9th Cir. 2010) ..........................................................................18

*Eng v. Marcus & Millichap Co.*,
   2011 WL 2175207 (N.D. Cal. June 3, 2011)..........................................13, 14, 15

*F.T.C. v. Garvey*,
   383 F.3d 891 (9th Cir. 2004) ..........................................................................23

*Favish v. Office of Indep. Counsel*,
   217 F.3d 1168 (9th Cir. 2000) ........................................................................24

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ..........................................................................24

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981)..........................................................................................17

*Headwaters Inc. v. U.S. Forest Serv.*,
   399 F.3d 1047 (9th Cir. 2005) ........................................................................24

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

iii

*Hydranautics v. FilmTec Corp.*,
   204 F.3d 880 (9th Cir. 2000) ...........................................................................23

*In re Am. Online Spin-Off Accounts Litig.*,
   2005 WL 5747463 (C.D. Cal. May 9, 2005) ....................................................10

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
   770 F.2d 328 (2d Cir. 1985) .............................................................................17

*In re Girardi*,
   611 F.3d 1027 (9th Cir. 2010) ..........................................................................24

*In re Jamster Mktg. Litig.*,
   2008 WL 4482307 (S.D. Cal. Sept. 29, 2008) ..................................................10

*In re School Asbestos Litig.*,
   842 F.2d 671 (3d Cir. 1988) .............................................................................17

*In re Subpoena Issued to Dennis Friedman*,
   350 F.3d 65 (2d Cir. 2003) ...............................................................................16

*In re USA Commercial Mortg. Co.*,
   397 F. App'x. 300 (9th Cir. 2010) ......................................................................7

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
   2003 U.S. Dist. LEXIS 26070 (W.D. Mo. Dec. 22, 2003) ...............................17

*ITT Cmty. Dev. Corp. v. Barton*,
   569 F.2d 1351 (5th Cir. 1978) ..........................................................................18

*Johns v. Town of Los Gatos*,
   834 F. Supp. 1230 (N.D. Cal. 1993) ........................................................13, 14, 15

*Juniper Networks, Inc. v. Mosaid Techs. Inc.*,
   2012 WL 1029572 (N.D. Cal. Mar. 26, 2012) ...................................................8

*Klay v. United Healthgroup, Inc.*,
   376 F.3d 1092 (11th Cir. 2004) .............................................................11, 18, 19

*Medifast, Inc. v. Minkow*,
   2011 WL 1157625 (S.D. Cal. Mar. 29, 2011) ..................................................20

*Molski v. Evergreen Dynasty Corp.*,
   500 F.3d 1047 (9th Cir. 2007) ....................................................................12, 13

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

iv

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL
LITIGATION AGAINST HER COUNSEL

*Moy v. United States*,
   906 F.2d 467 (9th Cir. 1990) ............................................................. 12

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*,
   2012 WL 3277222 (N.D. Cal. Aug. 9, 2012) ................................. 8, 9

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   523 F.3d 1091 (9th Cir. 2008) ............................................................. 9

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ................................................................. 8

*Pastrana v. Local 9509, Commc'ns Workers of Am., AFL-CIO*,
   2007 WL 2900477 (S.D. Cal. Sept. 28, 2007) ................................. 16

*Peters v. Brants Grocery*,
   990 F. Supp. 1337 (M.D. Ala. 1998) .................................................. 9

*Piambino v. Bailey*,
   610 F.2d 1306 (5th Cir. 1980) .......................................................... 17

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
   115 F.3d 644 (9th Cir. 1997) ............................................................. 24

*Ronlake v. US-Reports, Inc.*,
   2012 WL 4468431 (E.D. Cal. Sept. 26, 2012) ........................... 10, 11

*Saleh v. Titan Corp.*,
   353 F. Supp. 2d 1087 (S.D. Cal. 2004) .............................................. 9

*Sandpiper Village Condo. Ass'n., Inc. v. La.-Pacific Corp.*,
   428 F.3d 831 (9th Cir. 2005) ............................................................. 10

*Shelton v. Am. Motors Corp.*,
   805 F.2d 1323 (8th Cir. 1986) .......................................................... 16

*Sieverding v. Colo. Bar Ass'n*,
   469 F.3d 1340 (10th Cir. 2006) ........................................................... 8

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990) ........................................................................ 12

*Smith v. Phoenix Techs. Ltd.*,
   2011 WL 5444700 (N.D. Cal. Nov. 9, 2011) ....................... 13, 14, 15

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

v

*Thomas v. Cate*,
    2010 WL 1343789 (E.D. Cal. Apr. 5, 2010) ...................................................... 16

*Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*,
    1990 WL 136742 (E.D. La. Sept. 18, 1990) ......................................................... 7

*United States v. Edwards*,
    595 F.3d 1004 (9th Cir. 2010) .............................................................................. 23

*Va. Sur. Co. v. Northrop Grumman Corp.*,
    144 F.3d 1243 (9th Cir. 1998) .............................................................................. 24

*Van Deelen v. City of Kansas City, Missouri*,
    262 F. App'x. 723 (8th Cir. Oct. 19, 2007) ............................................................ 8

*WebSideStory, Inc. v. NetRatings, Inc.*,
    2007 WL 1120567 (S.D. Cal. Apr. 6, 2007) ....................................................... 16

*Wedges/Ledges of Cal. v. City of Phoenix*,
    24 F.3d 56 (9th Cir. 1994) ...................................................................................... 7

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) .............................................................................................. 18

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1985) .................................................................................. 9

*Willer v. Las Vegas Valley Water Dist.*,
    176 F.3d 486 (9th Cir. 1999) ............................................................................... 16

*Winter v. Natural Res. Defense Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................. 18

*Xilinx, Inc. v. Invention Inv.*,
    2011 WL 3206686 (N.D. Cal. July 27, 2011) ...................................................... 8

*Younger Mfg. Co. v. Kaenon, Inc.*,
    247 F.R.D. 586 (C.D. Cal. 2007) .................................................................. 16, 17

**STATUTES**

15 U.S.C. § 1125(a)(1)(B) ........................................................................................ 6

15 U.S.C. § 1125(c) .................................................................................................. 6

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL
LITIGATION AGAINST HER COUNSEL

15 U.S.C. § 1125(d)(1)(A) ............................................................................6

28 U.S.C. § 1927 ........................................................................................24

O.R.C. § 2307.81 ..........................................................................................6

O.R.C. § 4165.02 ..........................................................................................6

**OTHER AUTHORITIES**

9th Cir. Rule 36-3(c) ...................................................................................16

Fed. R. Civ. P. 23 ...................................................................................1, 17

U.S.D.C. Central Dist. CA L.R. 7-3 .............................................................6

U.S.D.C. Central Dist. CA L.R. 11-9 ..........................................................24

U.S.D.C. Central Dist. CA L.R. 83-7 ..........................................................24

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL
LITIGATION AGAINST HER COUNSEL

**I.    INTRODUCTION**

Plaintiff's Motion For An Order Enjoining Defendant From Prosecuting Collateral Litigation Against Her Counsel (the "Motion") seeks to enjoin The J.M. Smucker Company ("Smucker") from prosecuting an action against Plaintiff's counsel (the "Weston Firm") that is pending in Ohio district court, *J.M. Smucker Co. v. The Weston Firm, P.C.*, Case. No. 5:13-CV-00448-JRA (N.D. Ohio) (the "Ohio Action"). The Ohio Action is not "collateral" to this action as Plaintiff argues—it was filed in a separate federal district, in a separate state, alleging distinct claims, and is brought solely against the Weston Firm, who is not a party to this suit.  Not one of the six claims at issue in the Ohio Action is being litigated here, nor do they arise from the same facts and circumstances as Plaintiff's claims here, but instead relate to the dilution of Smucker's trademark, and misrepresentations about Smucker and its products, made by the Weston Firm in its smuckerlawsuit.com website.[1]

There are several procedural and substantive barriers to Plaintiff's Motion. Plaintiff has no standing to bring the Motion.  She is not a party to the Ohio Action, and, as such, cannot seek to enjoin it.  Indeed, the Weston Firm is attempting to use Ms. Caldera as its proxy to be heard by this Court which is not only improper, but also sanctionable.  Beyond the procedural hurdles, Plaintiff has not (and cannot) establish that "extraordinary circumstances" exist here to justify an injunction halting the Ohio Action.  Whether based on the Court's powers under the "All Writs Act," through an anti-suit injunction or "vexatious" litigant order; through the Court's power to issue orders under Federal Rule of Civil Procedure 23;[2] or through traditional considerations for injunctive relief, there is no valid basis for the Court to enjoin Smucker from prosecuting the Ohio Action.  No matter what the outcome in the Ohio

---

[1] Throughout the Motion, the Weston Firm portrays itself as a champion of the First Amendment through its website, and yet has filed this Motion (purportedly on behalf of Plaintiff) seeking to impinge upon Smucker's right to freely access the courts relating to a dispute arising out of the same website.
[2] All further statutory references are to the Federal Rules of Civil Procedure unless otherwise noted.

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL LITIGATION AGAINST HER COUNSEL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Action, it will not interfere with the ability of this Court to manage this action, or the ability of Plaintiff to seek relief on behalf of herself or the alleged class.

For these and the foregoing reasons, the Court should deny Plaintiff's Motion. Further, because the Motion is frivolous and brought in bad faith, the Court should grant sanctions to Smucker for its expense in responding to the Motion.

## II.   FACTUAL BACKGROUND

### A.   The Weston Firm and Its Campaign Against Smucker

The Weston Firm purports to specialize in consumer class actions against major U.S. corporations.  The Weston Firm has filed three lawsuits against Smucker on behalf of three different sets of plaintiffs: *Henderson v. The J.M. Smucker Co.*, Case No. 2:10-CV-04524-GHK-VBK (C.D. Cal.); *Perez v. The J.M. Smucker Co.*, Case No. 37-2012-00093211-CU-FR-CTL (San Diego Cnty. Sup. Ct.); and the instant action (collectively, the "Class Actions").  The *Perez* matter is stayed pending resolution of the instant lawsuit.  The claims of Plaintiff Mary Henderson in the *Henderson* matter were dismissed on October 23, 2012.  (*Henderson* Dkt. 219.)  In this case, Plaintiff is challenging Smucker's comparison to butter, and the "All-Vegetable," "Wholesome," "Homemade Goodness," "Whole Wheat," and "Whole Grain" claims on Crisco All Vegetable Shortening products and Uncrustables Sandwiches (the "Smucker Products").[3]  (*Caldera* Dkt. 23 ¶¶ 85-112.)

### B.   The Website

Despite the Court's dismissal of Plaintiff's individual claims in the *Henderson* matter, on January 7, 2013, Plaintiff there filed a motion for attorneys' fees and costs, including for "website development."  (*Henderson* Dkt. 226.)  In investigating Plaintiff's request for fees, Smucker discovered that Plaintiff's counsel in this and the *Henderson* action created a website called SmuckerLawsuit.com (the "Website").  The Website is not directed at any specific individuals with potential claims against

---

[3] On March 25, 2013, this Court dismissed many of Plaintiffs' claims in this action with prejudice.  (Dkt. 45.)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  Smucker, and does not specifically mention bringing additional cases against

2  Smucker.  (Fraelich Decl. Ex. 1 (Ohio Compl.) Ex. G; *see id.* at ¶ 8.)  It does not

3  reference the Weston firm in the "contact us" section.  (*See id.* Ex. 1 (Ohio Compl.)

4  Ex. G.)  The Website includes an alleged "plain language" description of the alleged

5  conduct underlying the Class Actions, and an incomplete and misleading description

6  of the procedural history of the Class Actions, omitting several pleadings and the

7  orders which dismissed the cases of Ms. Henderson and Ms. Vinson and greatly

8  curtailed the case of Ms. Caldera.  (*Id.* at Ex. 1 (Ohio Compl.) Ex. G pp. 56-57.)

9      Disturbingly, the Website also contains numerous false and disparaging claims

10  regarding Smucker and its products.  In fact, the title appearing on the home page is

11  "SMUCKER'S FOODS CONTAIN HARMFUL TRANS FATS."  The Website

12  depicts Smucker's trademarks and packaging designs in close proximity to

13  disparaging claims, such as "Smucker's [sic], however, has placed profits over

14  children's health . . . ."  (Declaration of Timothy P. Fraelich ("Fraelich Decl.") Ex. 1

15  (Ohio Compl.) ¶ 32.)  The false, defamatory, and disparaging claims appearing on the

16  Website and at issue in the Ohio Action include:

17      o  By replacing saturated fat with trans fat, Smucker's [sic] pretends to offer

18  a healthier product, but replacing saturated fat with trans fat actually makes Crisco

19  Shortening more dangerous.

20      o  Crisco Shortening is not healthier than butter.  Each of these claims

21  distracts the purchaser from Crisco Shortening's harmful trans fat content and

22  deliberately pretends that its lower saturated fat content automatically makes it a

23  healthy choice.  This message is false.

24      o  Crisco Shortening is a laboratory creation and a health risk.

25      o  It may seem odd that an "All-Vegetable" product could be such a risk for

26  coronary heart disease, but the explanation is simple:  Smucker's "All-Vegetable"

27  claim is a lie.

28      o  Smucker's [sic] still sells Uncrustables and Crisco Shortening products

3

1  containing dangerous artificial trans fat.

2      o      Smucker's Uncrustables and Crisco Shortening contain dangerous

3  artificial trans fat.

4      o      Smucker's [sic] wants to convince parents that Uncrustables are a healthy

5  everyday meal for young children.  These claims are classic misdirection and deceit.

6      o      Smucker's [sic] knowingly takes advantage of consumers' preference for

7  healthier whole grain options while willfully ignoring the fact that their supposedly

8  "wholesome" sandwiches put consumers at risk of coronary heart disease.

9      o      [Smucker] presents Uncrustables as a healthy choice for busy parents and

10  children, but Uncrustables should never be fed to children, because trans fat is the

11  most deadly nutrient in the American diet.

12      o      Smucker's behavior is especially egregious because they are deliberately

13  deceiving busy parents.  In order to understand the health risk that Uncrustables pose

14  to their children, consumers have to look past the whole wheat claims and dig even

15  deeper than the nutrition facts panel.

16      o      There is nothing wholesome about giving Uncrustables to children and

17  nothing wholesome about Smucker's deceptions.

18      o      Smucker's [sic], however, has placed profits over children's health and

19  disguised their products' trans fat content behind deceptive packaging claims.  For

20  example, Uncrustables claim to be "wholesome."  Crisco Shortening pretends to be a

21  healthier alternative to butter.

22      o      High fructose corn syrup gives Uncrustables a high glycemic index,

23  meaning that it causes blood sugars to spike quickly after eating. Habitual blood sugar

24  spikes lead to diabetes.

25          (Fraelich Decl., Ex. 1 (Ohio Compl.) ¶ 33.)

26          Consequently, on Friday, February 22, 2013, counsel for Smucker sent, via

27  FedEx, a cease-and-desist letter to the Weston Firm and the Law Offices of Ronald A.

28  Marron (the Weston Firm's co-counsel in *Henderson*, *Perez*, and this action),

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

4

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL
LITIGATION AGAINST HER COUNSEL

identifying some of the offensive content and highlighting some of the laws which the Website violates.  (Weston Decl., Ex. 1.)  Counsel for Smucker emailed a courtesy copy of the letter on Saturday, February 23, 2013.  The letter requested that the Weston Firm: (1) immediately deactivate the Website; (2) refrain from creating any other such websites that discuss ongoing litigation; (3) agree not to register any other domain name that contains Smucker's name or product names; and (4) confirm that the firm did not currently have any other such domains registered.  (*Id*.)  The letter further noted Smucker's desire to achieve "an amicable and speedy resolution to this matter," and confirmed that the letter was "written without prejudice to any claim for damages or other relief that The J.M. Smucker Company may have in the event that litigation in this matter might prove necessary." (*Id*.)

## C.     The San Diego Action

On February 24, 2013, Smucker's counsel, Ron Rothstein, engaged in a lengthy and cordial telephone conversation with Mr. Weston attempting in good faith to resolve the dispute over the Website.  (Declaration of Ronald Y. Rothstein ("Rothstein Decl.") ¶ 2.)  In the conversation, Mr. Weston expressed his view that the Website was protected by the litigation privilege.  (*Id*.)  Counsel for Smucker explained that he disagreed because the Website was anonymous, made defamatory statements about Smucker and its famous brands, and violated an Ohio statute that prohibits dissemination of false information about the safety of Ohio's food supply.  (*Id*.)  Counsel for Smucker requested that Mr. Weston send him the case law that he claimed supported his position and promised to seriously evaluate the legal merits behind Mr. Weston's defense.  (*Id*.)  Counsel for Smucker closed the call requesting that the parties maintain an open dialogue and invited a follow-up call later that week. (*Id.;* Weston Decl., Ex. 1 (2/22/13 letter).)

Instead, the very next day, *before* Smucker filed the Ohio Action, the Weston Firm raced to court and filed a separate lawsuit against Smucker (the "San Diego Action") and included as additional Plaintiffs the many Plaintiffs used in the Class

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL LITIGATION AGAINST HER COUNSEL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    Actions, despite the fact that the cease-and-desist letter was addressed only to Mr.

2    Weston and the Weston Firm.  Mr. Weston likewise included as defendants senior

3    level Smucker executives, including Tim Smucker, Richard Smucker, and Mark

4    Smucker, who did not write the cease-and-desist letter to Mr. Weston.  (Rothstein

5    Decl. Ex. A (San Diego Compl.).)[4]

6        The Complaint in the San Diego Action seeks:  (1) "Declaratory Judgment that

7    Plaintiffs are Absolutely Immune From Suit For The Contents" of the Website;  (2)

8    "Declaratory Judgment that [the Website's] Content is True and Non-Defamatory";

9    and (3) "Permanent Equitable and Anti-Suit Injunction."

10       Smucker has filed a demurrer to the San Diego Action given that it was filed as

11   an improper "anticipatory suit," asserting issues that will be completely resolved

12   through the Ohio Action.  (Rothstein Decl. Ex. B.)

13   **D.    The Ohio Action**

14       On March 1, 2013, Smucker filed the Ohio Action in the Northern District of

15   Ohio.  (Fraelich Decl., Ex. 1.)  The Ohio Action is not solely a "defamation" case, as

16   it is mischaracterized in the Motion.  Instead, the claims brought by Smucker against

17   the Weston Firm include the following claims:  (1) False or Misleading Descriptions

18   or Representations (15 U.S.C. § 1125(a)(1)(B)); (2) Trademark Dilution (15 U.S.C. §

19   1125(c)); (3) Violation of the AntiCybersquatting Consumer Protection Act (15

20   U.S.C. § 1125(d)(1)(A)); (4) Deceptive Trade Practices (O.R.C. § 4165.02); (5)

21   Violation of the Ohio Food Disparagement Statute (O.R.C. § 2307.81); and (6)

22   Corporate Defamation (Ohio Common Law).  (Fraelich Decl. ¶ 3 and Ex. 1.)

23   **E.    The Motion**

24       On May 6, 2013, Mr. Weston's vexatious conduct continued.  Failing to comply

25   with the obligations of Local Rule 7-3,[5] Plaintiff filed the instant motion and noticed

26   ────────────────────────────

27   [4] The next day, the Weston Firm responded to Smucker's letter, noting that it wished
     to resolve the matter and offering settlement terms.  (Fraelich Decl. at Ex. 1 (Ohio
     Compl.) at Ex. I.)

28   [5] While Mr. Weston mentioned that he planned to file a motion seeking to enjoin the
     Ohio Action, he provided no specifics about the "substance" of Plaintiff's intended

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

the hearing such that Smucker has only one week to respond.  That same day Mr. Weston filed his motion seeking class certification, again providing Smucker only one week to respond.  Suffice it to say, Mr. Weston is using the judicial system to his full advantage to inflict maximum damage on Smucker.

## III.   PLAINTIFF'S MOTION IS PROCEDURALLY DEFECTIVE

### A.   Plaintiff Is Not A Party To The Ohio Action And Thus Lacks Standing To Bring The Motion

"The prudential limitations [on standing] include a requirement that the plaintiff 'assert his own rights, rather than rely on the rights or interests of a third party.'" (*Wedges/Ledges of Cal. v. City of Phoenix*, 24 F.3d 56, 61 (9th Cir. 1994); *see, e.g.*, *In re USA Commercial Mortg. Co.*, 397 F. App'x. 300, 304-05 (9th Cir. 2010) (affirming district court order where the appellants were "improperly attempting to raise the rights of third parties not presently before the court").)  In *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 1990 WL 136742, at *1 (E.D. La. Sept. 18, 1990), the defendants filed a state court lawsuit for defamation against Louis Vergona.  The plaintiff in the federal action sought to enjoin prosecution of the state court defamation action, arguing that the defendants filed the state court lawsuit solely to interfere with the federal lawsuit and a settlement.  (*Id.*)  The court denied the plaintiff's motion for a preliminary injunction because the plaintiff "has no right to seek to enjoin a state court suit to which it is not a party."  (*Id.*)

Similarly, Plaintiff's Motion attempts to obtain through this action an injunction enjoining Smucker from prosecuting the Ohio Action, where she is not even named as a party.  Like in *Travelers Ins. Co.* where the plaintiff lacked standing to enjoin a suit to which it was not a party, Plaintiff lacks standing to seek such injunctive relief in an action to which she is not a party.

### B.   The Motion Is Brought In The Wrong Court

Plaintiff's Motion is procedurally improper for at least two additional reasons.

motion, which is required by Local Rule 7-3.  (Rothstein Decl. ¶ 3.)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

First, a motion to dismiss through an anti-suit injunction on the basis that it is the second-filed lawsuit should be brought in the second-filed court, not the first-filed court.  In *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, 2012 WL 3277222 (N.D. Cal. Aug. 9, 2012), the court acknowledged that it was presented with "a rather unusual procedural posture for application of the first-to-file rule" because "[n]ormally, when 'cases involving the same parties and issues have been filed in two different districts,' it is 'the second district court' that exercises its 'discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy.'"  (*Id.* at *6 (quoting *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)); *see, e.g.*, *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622 (9th Cir. 1991)).[6]

Second, courts may impose orders under the All Writs Act barring vexatious litigation only in courts within the same district or circuit in which the pending action has been filed—not federal courts in separate circuits.  (*See, e.g., Sieverding v. Colo. Bar Ass'n*, 469 F.3d 1340, 1344 (10th Cir. 2006) (noting that it is only "appropriate" for the District of Colorado to impose filing restrictions that include other federal district courts within the Tenth Circuit, and that it is "not appropriate" to extend those restrictions to include federal district courts outside of this Circuit because "[i]t is not reasonable for a court in this Circuit to speak on behalf of courts in other circuits in the country; those courts are capable of taking appropriate action on their own."); *see also Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 191-92 (5th Cir. 2008) (amending vexatious litigant order preventing litigant from filing claims only in Texas); *Van Deelen v. City of Kansas City, Missouri*, 262 F. App'x. 723 (8th Cir. Oct. 19, 2007) (modifying injunction to apply only to actions filed within the Eighth Circuit).)  Thus, Plaintiff should have brought this request, if at all, in the Ohio Action, rather than asking this Court to enjoin the Ohio court.  (*Cenergy Corp. v.*

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

---

[6] (*See also, Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982); *Juniper Networks, Inc. v. Mosaid Techs. Inc.*, 2012 WL 1029572 (N.D. Cal. Mar. 26, 2012);  *Xilinx, Inc. v. Invention Inv.*, 2011 WL 3206686 (N.D. Cal. July 27, 2011).)

8

1  *Bryson Oil & Gas P.L.C.*, 657 F. Supp. 867, 871 (D. Nev. 1987).)

2  **IV.    THERE IS NO VALID BASIS FOR THIS COURT TO ENJOIN**

3  **SMUCKER FROM PROSECUTING THE OHIO ACTION**

4  **A.    Anti-Suit Injunctions Are Extremely Rare And Only Granted In**

5  **"Extraordinary Circumstances" Not Present Here**

6  Asking the court to issue an order "enjoining an action in another [federal]

7  district" is considered an "extraordinary step" and will "rarely be granted." (*Saleh v.*

8  *Titan Corp.*, 353 F. Supp. 2d 1087, 1089 (S.D. Cal. 2004) (quoting *Del Mar Avionics*

9  *v. Quinton Instruments Co.*, 645 F.2d 832, 836 (9th Cir. 1981)); *Bergh v. State of*

10  *Washington*, 535 F.2d 505, 507 (9th Cir. 1976).)  Circuit courts are generally in

11  agreement that principles of comity restrain a district court from enjoining an action

12  underway in a sister court.  (*Nat'l Union*, 2012 WL 3277222, at *8.)  In the Ninth

13  Circuit, "[w]hen an injunction sought in one federal proceeding would interfere with

14  another federal proceeding, considerations of comity require more than the usual

15  measure of restraint, and such injunctions should be granted only in the most unusual

16  cases." (*Bergh,* 535 F.2d at 507.)  "The federal courts long have recognized that

17  …federal district courts—courts of coordinate jurisdiction and equal rank—[are

18  required] to exercise care to avoid interference with each other's affairs." (*West Gulf*

19  *Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985).).

20  Accordingly, "[t]he power conferred on a federal court under the All Writs Act

21  must be exercised with caution and restraint." (*Peters v. Brants Grocery*, 990 F.

22  Supp. 1337, 1342 (M.D. Ala. 1998).)   The power is "not unlimited." (*Negrete v.*

23  *Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1098 (9th Cir. 2008).)  In *Negrete,* the

24  Ninth Circuit held that the district court abused its discretion in enjoining a sister

25  federal court from approving a settlement in a parallel class action because there

26  "simply was no proper support for the district court's enjoining of proceedings in

27  other courts." (*Id.* at 1100.)

28  Courts that have found "extraordinary circumstances" present to enjoin separate

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL
LITIGATION AGAINST HER COUNSEL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

litigation involve facts entirely distinguishable from this case.  For example, in *In re Am. Online Spin-Off Accounts Litig.*, 2005 WL 5747463, at *4 (C.D. Cal. May 9, 2005), the court found "extraordinary circumstances" where a settlement in another state court litigation would have defeated multi-district jurisdiction over the class. Other examples further confirm this is not the type of case warranting the "extraordinary" relief Plaintiff seeks here.  *See In re Jamster Mktg. Litig.*, 2008 WL 4482307, at *6-10 (S.D. Cal. Sept. 29, 2008) (enjoining party from settling in another case where that settlement would impact the court's ability to decide issues raised in multi-district related actions, including the plaintiff's ability to recover against certain defendants that were parties to both actions); *Sandpiper Village Condo. Ass'n., Inc. v. La.-Pacific Corp.*, 428 F.3d 831, 843 (9th Cir. 2005) (noting that where multiple lawsuits seek to adjudicate rights over a certain piece of property, courts can enjoin the parallel action).  The Ohio Action will have no impact on the class claims here, jurisdiction, or any proposed settlement.  Plaintiff has not established how the pending Ohio Action would threaten or disrupt the present action or potential settlement.

In a case quite similar to this one, *Ronlake v. US-Reports, Inc.*, 2012 WL 4468431 (E.D. Cal. Sept. 26, 2012), the court denied an anti-suit injunction where the plaintiff could not show that the same parties were at issue and that the first action would be dispositive of the action to be enjoined.  The plaintiffs sued defendant GM2 in the Eastern District of California for overtime compensation claims.  (*Id.* at *1.) GM2 counterclaimed.  (*Id.* at *2.)  Then the plaintiffs were sued by Member Management in New York state court.  (*Id.* at *3.)  The plaintiffs moved in the California federal court for an injunction against the New York state court lawsuit, claiming that Member Management is an agent of, and therefore in privity with, GM2. (*Id.* at *4.)  The court applied the Ninth Circuit test for the issuance of anti-suit injunctions, considering whether (1) the suit to be enjoined involves the same parties and issues[7] and would be dispositive of the action to be enjoined, (2) the foreign

---

[7] And even the "fact that litigation involving the same issues is occurring concurrently

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

10

litigation[8] would frustrate a policy of the forum issuing the injunction, and (3) there would be an "[in]tolerable" impact on comity. (*Id.*) The court held that the first element failed, as neither the "same" parties nor the same issues were presented, as the New York action involved issues not present in the California action, and would thus not be dispositive on the New York action. (*Id.* at *4-6.) The court also held that there was no frustration of California policy and no intolerable impact on comity. (*Id.* at *6-7.) Thus, the court denied the injunction. (*Id.* at *7.)

The Court here should deny Plaintiff's request to issue an anti-suit injunction for the same reasons articulated in *Ronlake*: (1) the same parties and issues are not present; (2) there is no frustration of California policy through the Ohio Action; and (3) there is no intolerable impact on comity in allowing the separate action to proceed.

Plaintiff cites *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), as supporting the proposition that "[w]hen a district court has jurisdiction over all parties involved, it may enjoin later filed actions." But in *Decker*, the plaintiff filed a complaint in the District of Montana seeking a declaration that the problems at the Edison plants did not qualify as "force majeure" events under certain contracts, and also sought damages for breach of contract. (*Id.* at 837-38, 843-44.) Nine days later, the defendant filed an action in the Northern District of Illinois seeking a declaration that it properly invoked the force majeure provision of the contract. (*Id.* at 843-44.) There, the first-to-file rule was properly invoked because the same parties and the same claim at issue in the second-filed action would be fully resolved by the first-filed action. (*Id.*)

The exceptional circumstances that have supported anti-suit injunctions against related proceedings under the All Writs Act are simply not present here.

_____

in another forum does not sufficiently threaten the court's jurisdiction as to warrant an injunction under [the All Writs Act]." (*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102-03 n.22 (11th Cir. 2004).)

[8] Additionally, the anti-suit injunction doctrine only applies to enjoining litigants from prosecuting actions in "foreign" courts. There are no cases applying this in the context of two federal courts in separate districts, which would not be "foreign" because they are part of the same system.

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL LITIGATION AGAINST HER COUNSEL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

### B.    Plaintiff Comes Nowhere Close To Showing That Smucker Is A "Vexatious Litigant" That Would Trigger The Court's Power To Restrict Smucker's Access to Courts Under the All Writs Act

Significantly, even Plaintiff admits that "Smucker's behavior has not yet risen to the level of vexation" to "justify such an injunction." (Mot. 12:15-16.) Plaintiff's admission should thus end the Court's inquiry into Smucker's alleged "vexation." Nevertheless, Plaintiff includes an entire section in the Motion dedicated to Smucker's "vexatious intent" (Mot. at 3-4) and proceeds to argue that "Smucker's general pattern of harassing behavior justifies an injunction under the All Writs Act." (*Id.* at 12:11-12.) Orders restricting filings by litigants are the *exception* to the general rule of free access to courts. (*De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990).) The irony here could not be more apparent, as Mr. Weston has now filed four separate lawsuits against Smucker, which certainly qualifies him as vexatious.[9]

Indeed, the undisputed facts are that Smucker sent a cease-and-desist letter requesting "an amicable and speedy resolution to this matter," counsel for Smucker engaged in a lengthy phone conversation with Mr. Weston, requesting case law that supported Mr. Weston's claim of privilege and stated that it would be seriously considered, and finally, one day later, Mr. Weston filed a preemptory declaratory judgment lawsuit against Smucker. Each of these facts negates any contention that Smucker has acted in a vexatious manner.

Pre-filing restrictions against potential plaintiffs are "extraordinary remed[ies] that should be narrowly tailored and rarely used." (*Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990); *DeLong*, 912 F.2d at 1147.) It is only litigants with abusive, lengthy, and frivolous litigation histories that may be enjoined from bringing further frivolous litigation. (*Id.*; *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007); *Moy*, 906 F.2d at 470.) Before issuing a pre-filing order, the Court

---

[9] Also ironically, Plaintiff's Motion seeks to prevent Smucker from accessing the courts on the grounds that Plaintiff is being deprived the "freedom of access to the courts." (Mot. at 8:20-22) (citing *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990)).

must indicate what court filings support issuance of the order (there are *none*
identified here besides Smucker opposing a *pro hac* application, which is well within
its rights)[10] and identify the filings that were frivolous and harassing.  (*DeLong*, 912
F.2d at 1147-48.)[11]

Relevant case law makes clear that the burden on a party seeking a vexatious
litigant order is extremely high.  (*See, e.g., Eng v. Marcus & Millichap Co.*, 2011 WL
2175207, *1-2, 5 (N.D. Cal. June 3, 2011) (where the plaintiff had filed 50 lawsuits,
including filing a lawsuit with many false allegations the same day he was tentatively
declared a vexatious litigant by the state court, and sent several threatening and
harassing emails directly to the defendants as well as defense counsel, the court issued
a narrowly tailored order requiring the plaintiff to obtain permission before filing
another lawsuit against the same particular defendants in the Northern District);
*Benoza v. Target Personnel Servs.*, 1997 WL 446232, *2 (N.D. Cal. July 29, 1997)
(issuing an order to show cause why a pre-filing order should not be issued to prevent
the plaintiff from filing any future actions against the defendant involving the same or
substantially similar claims after the plaintiff filed multiple worker's compensation
claims against the same defendant, and then sued the defendant three more times, all
based on the same facts, and all of which the plaintiff lost); *Johns v. Town of Los
Gatos*, 834 F. Supp. 1230, 1232-33 (N.D. Cal. 1993) (issuing an order preventing the
plaintiff from filing any further litigation against or relating to the defendants without
the court's permission where the plaintiff filed four suits and various appeals over ten
years, alleging the same facts and claims against the same defendants, each of which
was decided against the plaintiff on the merits).  By comparison, in *Smith v. Phoenix*

---

[10] *See* Fraelich Decl. ¶¶ 9-10.
[11] In making its determination, the court must consider the following five factors: (1)
the litigant's history of litigation and whether it entailed harassing or duplicative suits;
(2) the litigant's motive in pursuing the litigation; (3) whether the litigant is
represented by counsel; (4) whether the litigant has caused unnecessary expense or
placed a needless burden on the courts; and (5) whether other sanctions would be
adequate to protect the courts and other parties. (*Molski*, 500 F.3d at 1058.)  Plaintiff
has not made a proper showing of these elements, and even if the Court considered
them, they would each weigh against Plaintiff.

13

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL
LITIGATION AGAINST HER COUNSEL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Techs. Ltd.*, 2011 WL 5444700 (N.D. Cal. Nov. 9, 2011), the court *denied* a vexatious litigant order where the plaintiff had filed 74 lawsuits and had pre-filing orders issued against her. (*Id.* at *6-7.) Though the court recognized the "mounting record of frivolous findings against Plaintiff," the court reasoned that most of those were unrelated to the product liability suit at issue, and none of the plaintiff's other product liability cases were dismissed as frivolous. (*Id.* at *7.)

Unlike *Eng*, *Benoza* and *Johns*, which as explained above involved prior and duplicative litigation resolved against the parties declared vexatious, and the party's continued attempts to relitigate the same issues in separate actions, Smucker has filed just one lawsuit against the Weston Firm—the Ohio Action—which has not yet been resolved, let alone resolved against Smucker. While Plaintiff argues that Smucker is seeking to "prelitigate" the truth of certain statements—these are under separate claims with separate parties, and of course the statements on the Website created by the Weston Firm are not the same statements that Plaintiff alleges constitute false advertising in her complaint here. (*See infra* Part II.B.; Fraelich Decl. ¶¶ 5-7.)[12]

Plaintiff's examples of Smucker's "vexatious" intent (in contradiction to Plaintiff's acknowledgement that Smucker's conduct has "not risen" to the level of vexation) are based on Smucker (1) making a good-faith settlement offer to resolve the dispute (Weston Decl. Ex. 2); (2) opposing a *pro hac vice* application where Smucker believed there was an ethical conflict (and of course opposing an application that is ultimately granted does not mean you are vexatious)[13]; (3) one lone email that Smucker's separate counsel sent when frustrated with Plaintiff's counsel's lack of communication and misrepresentations regarding a scheduling issue (Fraelich Decl. ¶ 11); and (4) Smucker's counsel expressing an intent to take the deposition of Mr. Weston in the Ohio Action, a relevant witness in that case as he owns and created the

---

[12] Plaintiff relies heavily on *Doran v. Vicorp Rests., Inc.*, 407 F. Supp. 2d 1115 (C.D. Cal. 2005), but there, the court denied the defendant's motion to deem the plaintiff vexatious. (*Id.* at 1116.)

[13] *See* Fraelich Decl. ¶¶ 9-10.

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL LITIGATION AGAINST HER COUNSEL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   Website's content.  (Fraelich Decl. ¶ 8, Ex. 2.)  As shown above, the extent to which a

2   party must act vexatious before restrictions on litigation will be imposed is far greater

3   than what Smucker has been accused of here, and as Plaintiff has explicitly

4   acknowledged, none of these examples, individually or collectively, have "risen to the

5   level" of being vexatious under the law.  (Mot. 12:15-16.)

6       Even where courts do find that a vexatious litigant order is proper, it must be

7   narrowly tailored so as "'to prevent infringement on the litigator's right of access to

8   the courts.'"  (*DeLong*, 912 F.2d at 1147-48.)  Not only are orders regarding vexatious

9   litigants supposed to be "carefully" and "narrowly" tailored, such orders are generally

10  *prospective*, placing limits on future—the orders do not enjoin an entire separate

11  lawsuit that was already filed.  (*See, e.g., Eng*, 2011 WL 2175207, at *5 (court barred

12  the plaintiff from filing "any further pro se complaints" against certain defendants

13  without permission); *Benoza*, 1997 WL 446232, at *1 (stating that courts may prohibit

14  "a vexatious litigant from filing any future suits without the court's permission")

15  (citing *Delong*, 912 F.2d at 1147);  *Johns*, 834 F. Supp. at 1232-33 (barring future

16  suits).)  Indeed, these orders are commonly referred to as "pre-filing" orders, because

17  the restriction occurs pre-filing, not post-filing.  Here, Plaintiff's Motion to enjoin the

18  Ohio Action against the Weston Firm from proceeding at all is not narrowly tailored

19  towards preventing prospective litigation.

20       **1.    Plaintiff Cannot Insulate Key Witnesses From The Weston**

21            **Firm From Appearing For Deposition In The Ohio Action**

22       There is no basis for this Court (or any other court) to preclude the deposition of

23  Mr. Weston of the Weston Firm in the Ohio Action.  As a preliminary matter, the

24  propriety of Mr. Weston's deposition presents yet another issue that should be raised

25  before the court in the Ohio Action, not here.  But beyond the procedural defects with

26  raising this issue here, including that neither Plaintiff nor the Weston Firm has sought

27  a protective order from the deposition, Plaintiff or the Weston Firm could not meet

28  their "heavy burden" of showing why the deposition should not be allowed.  (*Apple*

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

15

*Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. Apr. 4, 2012).) Indeed, "it is very unusual 'for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances.'" (*Id.* (quoting *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007)).)

In the Ohio Action, the Weston Firm—the namesake of Mr. Weston—is a party to the action and seeks to represent itself in that action, rendering the cases it cites inapposite. Indeed, Mr. Weston is an interested party and controls whether and how the case is ultimately resolved. Plaintiff argues that taking the deposition of opposing counsel is "strongly disfavored," citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). But several California district courts have declined to follow *Shelton*.[14] These courts have instead followed the Second Circuit's more flexible standard in *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2d Cir. 2003), and have allowed parties to depose opposing counsel as fact witnesses, which Mr. Weston certainly is here. (*See, e.g.*, *Thomas v. Cate*, 2010 WL 1343789, at *3 (E.D. Cal. Apr. 5, 2010); *Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588 (C.D. Cal. 2007).) As the Second Circuit held in *Friedman*, whether the deposition of a lawyer should take place requires the Court to consider various factors, including "the need to depose the lawyer" and "the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation." (350 F.3d at 72.) Under this approach, "the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices . . . ." (*Id.*)

In *Younger,* the court denied the defendant's motion for a protective order

---

[14] Plaintiff's citation to the unpublished opinion *Willer v. Las Vegas Valley Water Dist.*, 176 F.3d 486 (Table) (9th Cir. 1999), for the proposition that the Ninth Circuit follows *Shelton* is improper. Unpublished Ninth Circuit cases issued before January 1, 2007 "may not be cited to the courts of this circuit . . . ." (Ninth Circuit Rule 36-3(c); *see Younger*, 247 F.R.D. 586 at 588 n.2.) Even California courts that have applied *Shelton* have compelled the deposition of opposing counsel. (*See, e.g.*, *Pastrana v. Local 9509, Commc'ns Workers of Am., AFL-CIO*, 2007 WL 2900477, at *6 (S.D. Cal. Sept. 28, 2007) (applying *Shelton* but nonetheless compelling deposition of opposing attorney).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL LITIGATION AGAINST HER COUNSEL

where the plaintiff sought to depose its in-house attorney regarding relevant, non-privileged communications, holding that the attorney's "deposition is like the deposition of any other percipient or fact witness."  (247 F.R.D. at 589.)  To the extent the defendant believed the plaintiff's questions to the attorney during his deposition might impinge on the work product doctrine or attorney-client privilege, the court noted that the defendant had simply to "make a proper objection."  (*Id.*)  Plaintiff has no basis with its Motion to restrict a deposition from proceeding in the Ohio Action.

### C.      There Is No Basis Under Rule 23 To Enjoin The Ohio Action

Plaintiff does not cite a single case, let alone a Ninth Circuit case, where a federal court has used Rule 23(d) to issue injunctions enjoining parties from litigating in a different court.  Courts that have dealt with whether injunctions are covered by Rule 23 have rejected this notion.  (*See, e.g.*, *Piambino v. Bailey*, 610 F.2d 1306, 1331 (5th Cir. 1980) (holding that a federal court injunction against state court proceedings is not "expressly authorized" by Rule 23(d); "Rule 23(d) is a rule of procedure and it creates neither a right nor a remedy enforceable in a federal court of equity."); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985) ("We do not find independent authority for the issuance of the injunction in [Rule 23]…."))  Plaintiff cites *In re School Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988) and *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) as supporting its claims that Rule 23 should be used by the Court here, but those cases are about the court's authority to issue orders restricting parties' communications with putative class members and are thus inapposite.  (*School Asbestos*, 842 F.2d at 679-80; *Gulf Oil*, 452 U.S. at 97-100.)  And while Plaintiff also cites *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2003 U.S. Dist. LEXIS 26070 (W.D. Mo. Dec. 22, 2003)—that case is *not* a Rule 23 case; it does not even cite Rule 23.

### D.      The Traditional Injunction Factors Are Irrelevant And In Any Event Not Satisfied

Plaintiff concedes that the traditional injunction test has no place here given the

17

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

basis for the injunction it is seeking under the "All Writs Act," citing *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978) (intent of an injunction under the All Writs Act requires a different standard than traditional injunction.)  Plaintiff also cites a case where the court noted that it is "unclear" how "traditional standards" for preliminary injunctions "would even be applicable."  (*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004).)  But despite its inapplicability, Plaintiff proceeds through a lengthy analysis of whether some limited number of Plaintiff's claims and select defenses in the Ohio Action satisfy the traditional test.  (Mot. 13-21.)  Thus, setting aside the admitted irrelevance of the analysis, and though this Court is not in a position to resolve the substance of claims and defenses in the Ohio Action, Plaintiff could not satisfy traditional injunction factors even assuming the analysis were relevant here (which it is not).  A preliminary injunction is an "extraordinary remedy" never awarded as of right.  (*Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008); *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).  In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  (*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987).)  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  (*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).)

Plaintiff relies on a case from the Eleventh Circuit for the proposition that a plaintiff must show that the injunction "aids and protects the court's jurisdiction." (*Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1132 n.21 (11th Cir. 2005).)  But in *Alabama*, the court reversed the injunction for a multitude of reasons, finding that the "extraordinary circumstances" to justify the injunction were not present, finding no "irreparable harm" and holding that the district court abused its discretion in finding a substantial likelihood of success on the merits.  (*Id.* at 1132 and n.22.)  Further, the *Alabama* court noted that injunctive relief failed because it was not

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL
LITIGATION AGAINST HER COUNSEL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

based on relief requested in the complaint.  (*Id.* at 1134-35.)

Plaintiff notes that courts should enjoin "conduct 'which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.'"  (*Klay*, 376 F.3d at 1102.)  But in *Klay*, the court in fact reversed the district court's grant of an injunction under the All Writs Act.  (*Id.* at 1110-11.)  In that case, the district court enjoined arbitrable claims from proceeding to arbitration for fear of possible res judicata effects on related ongoing federal litigation. (*Id.*)  This risk, the court held, did not justify the extraordinary remedy of an injunction.  (*Id.*)  Likewise, there are no "extraordinary circumstances" here to justify the injunction.  Neither Plaintiff nor the Weston Firm will suffer "irreparable harm," Plaintiff has not established a substantial likelihood of success by the Weston Firm on the merits, and the relief sought by Smucker in the Ohio Action is unrelated to the relief sought by Plaintiff here.

### 1.    Misstatements On Plaintiff's Website Are Not Protected By The Litigation Privilege

Contrary to Plaintiff's arguments, while some of the statements on the Website are taken from the class action complaints, the Weston Firm is not insulated from liability for false and defamatory statements and trademark violations under the guise of the litigation privilege simply because some parts of the Website are also contained in the litigation.  The entire Website and all its statements are not protected simply because part of its alleged purpose is to solicit potential class members for its ongoing string of lawsuits against Smucker.  Had Mr. Weston confined the allegations concerning Smucker, Crisco Shortening, and Uncrustables to the pleadings in the Class Actions, he would not be in the present mess.  Yet, astonishingly, Mr. Weston decided to publish these statements in an anonymous website directed to the entire world via the Internet and smuckerlawsuit.com domain.  His present claim that the conduct is protected by the litigation privilege collapses under its own weight.

There are several cases that have found statements appearing on websites, like

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

19

the statements at issue here, not protected by the litigation privilege because they are directed to the public generally and contain statements that attempt to "litigate to the press." In *Medifast, Inc. v. Minkow*, 2011 WL 1157625 (S.D. Cal. Mar. 29, 2011), a report published on the "Medifraud.net" website and the "Pyramid Scheme Alert" website was not protected because litigation privilege does not extend to the broad dissemination of defamatory statements. (*Id.* at *11.) The court held that to hold otherwise would immunize any false public accusation of wrongdoing, so long as the speaker forwards a copy of the statement to the responsible authorities. (*Id.*)

In *Ball v. D'Lites Enters., Inc*., 65 So. 3d 637, 639-41 (Fla. App. 2011), a franchisor's statements on its Internet website concerning a pending lawsuit that accused the plaintiffs of fraud and perpetrating a hoax on the public were not entitled to absolute immunity under the litigation privilege because the statements were not made in the proceeding itself, were made to the public at large, were not steps in the judicial process, and protection of the statements would do nothing to enhance the policy behind the privilege. (*Id. see, also, Am. Dental Ass'n v. Khorrami*, 2004 WL 3486525, *6 (C.D. Cal. Jan. 26, 2004) (statements on website fell outside of litigation privilege where published on website to others unconnected with the proceedings, as "the litigation privilege should not be extended to 'litigating in the press.'")

In *Brown v. Wireless Networks, Inc*., 2008 WL 1859990, at *3 (N.D. Cal. Apr. 24, 2008), the defendant was sued by its former president for breach of contract. After the lawsuit was filed, the defendant sent a letter to its shareholders discussing the lawsuit, but also criticizing the former president. (*Id*. at *4.) The plaintiff then added a claim for defamation based on this letter. (*Id*.) The defendant moved to dismiss the defamation claim based on the litigation privilege, arguing that the purpose of the letter was to facilitate the litigation. (*Id*.) The court denied the motion, finding that while the letter "addresses [the] litigation in part, it is not clear that the entire letter served to advance [the] litigation." (*Id*.) In a case directly on point, a California Court of Appeal held that a law firm's act of republishing a complaint on the firm's

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

20

website was not protected by the litigation privilege because this privilege "does not

apply to the republication of privileged statements to nonparticipants in the action."

(*Cole v. Patricia A. Meyer & Assocs., APC*, 206 Cal. App. 4th 1095, 1121 (2012).)

While statements that are "merely informing a third party of the pendency of

the litigation" and which state basic facts about the lawsuit are within the privilege,

*see, e.g.*, *Cargill Inc. v. Progressive Dairy Solutions, Inc*., 2008 WL 2235354, at *6

(E.D. Cal. May 29, 2008), that is *not* the basis for the claims in the Ohio Action, as the

Website goes far beyond posting a complaint and stating the basic facts of the

litigation by making false statements.  (*See* Fraelich Decl. Ex. 1 at ¶¶ 32-33.)

Among other things, it includes an alleged "plain language" description of the alleged

conduct underlying the Class Actions, and a deceptively incomplete description of the

procedural history of the Class Actions, omitting several pleadings and the orders

dismissing the cases of Ms. Henderson and Ms. Vinson and greatly curtailed the case

of Ms. Vinson.  (Fraelich Decl. Ex. 1 (Ohio Compl.) Ex. G at 56-57.)  The Website

further reiterates several prejudicial and unfounded statements regarding the

"dangerously high levels" of trans fat in Smucker's products.  (*Id*. Ex. 1 (Ohio

Compl.) Ex. G at 58-59.)  All of these statements, because they are made on the

Website, are made to the public at large, and necessarily to "nonparticipants in the

action."  Accordingly, just as the posting of the complaint in *Cole* was not protected

by the litigation privilege, the contents of the Website cannot, as a matter of law, be

protected by that privilege.

Plaintiff argues that "a press release and a website cannot be the target of a

retaliatory defamation lawsuit," citing the unpublished case *Corinthian Colleges, Inc.

v. Price*, 2005 WL 1199069 (Cal. App. May 20, 2005).  But the press release and

website in that case are very different from the Website here.  The press release

"contain[ed] nothing more than the allegations of the Florida class action complaint."

(*Id.* at *10.)  Additionally, the press release was intended to alert potential class

members to the pending class action.  (*Id.*)  While that may be part of the purpose of

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL
LITIGATION AGAINST HER COUNSEL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   the Website here, that is not the purpose of the statements that Smucker is alleging are

2   false in the Ohio Action.  And the Website went beyond merely repeating the

3   allegations in the class action complaint; rather, the statements were inflammatory and

4   false, and displayed an intention to injure Smucker's reputation.  Moreover, the

5   allegedly defamatory web site postings in *Corinthian* were not, as here, made by the

6   defendant on its own website, but were posted by the lead plaintiff on a chat room.

7   (*Id.* at *10-11.)  This is not the case with the Website here.

8       Plaintiff also relies on *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611

9   F.2d 738, 749 (9th Cir. 1979), which concerns the doctrine of federal comity, "a

10  discretionary doctrine which permits one district to decline judgment on an issue

11  which is properly before another district."  In that case, the California district court

12  deferred to a D.C. district court that was considering the same issue.  (*Id.*)  The Ninth

13  Circuit affirmed.  (*Id.* at 749-50.)  This case is not relevant here; Plaintiff is not asking

14  the Ohio court to decline judgment on these issues, but rather is asking this Court to

15  enjoin the Ohio Action.

16      In *Cargill*, the court found news releases posted on a website and distributed to

17  media within the litigation privilege where the news release stated "basic facts" about

18  lawsuit—not misrepresentations.  (2008 WL 2235354, at *6.)  In the news release,

19  Cargill states the basic facts about this lawsuit (i.e., where and when Cargill filed the

20  lawsuit).  (*Id.*)  The court further stated that "[t]he news release is non-actionable for

21  the additional reason that it is true, protected speech."  (*Id.*)  By contrast, the Website

22  does not simply state basic, true facts about the lawsuit; it is rife with false and

23  defamatory statements about Smucker's products and business ethics.

24      While Plaintiff suggests that there may be some impact that a judgment or

25  finding by the Ohio Action might have that could interfere with this Court's

26  jurisdiction, Plaintiff does not specify how this would improperly interfere with the

27  Court's jurisdiction over this action, even assuming the Ohio Action was resolved

28  first.  Plaintiff misleadingly refers to her Motion as seeking to enjoin "collateral"

22

litigation on the basis that it will somehow "obstruct" this case or cause "hardship" on Plaintiff.  First off, Black's Law Dictionary defines "collateral" as "[s]upplementary; accompanying, but secondary and subordinate to."  (Black's Law Dictionary (9th ed. 2009).)  There is nothing "collateral" about the Ohio Action, as it's not "secondary" or "subordinate" to the Class Actions—it's an independent, standalone lawsuit with independent claims, distinct parties, and entirely separate relief.

There is also no way that the Ohio Action will "obstruct" this Action or cause "hardship" weighing in Plaintiff's favor.  Plaintiff stops short of arguing that either collateral estoppel or res judicata might apply (issue or claim preclusion), which they would not.  Collateral estoppel applies only where it is established that (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.  (*United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010); *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).)  Similarly, claim preclusion, often referred to as res judicata, bars any subsequent suit on claims that were raised or could have been raised in a prior action preclusion, and "applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties."  (*Cell Therapeutics, Inc. v. Lash Group, Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009).)

None of these elements are satisfied.  First, the issues that will be decided here and in the Ohio Action are not even close to identical—with separate claims and separate defendants between this action and the Ohio Action.  Second, there has been no final judgment on the merits in either action, and even if there were, the judgment would not involve overlapping claims.  Third, there is no privity between Plaintiff and the Weston Firm.  Privity "is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved."  (*F.T.C. v. Garvey*, 383 F.3d 891, 897 (9th Cir.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

23

2004).)  At its core, "privity exists between two parties who adequately represent the same legal interests." (*Va. Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1247 (9th Cir. 1998); *see also Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1054 (9th Cir. 2005) ("[I]dentity of interests and adequate representation are necessary to such a finding [of privity].").)

Plaintiff is not in privity with the Weston Firm for purposes of collateral estoppel, as they do not adequately represent the same legal interests between the Class Actions and the Ohio Action.  Plaintiff will not be liable or responsible for any judgment in the Ohio Action, and Plaintiff's counsel (while perhaps incentivized financially and professionally to succeed in this litigation as counsel) will not be a prevailing or losing party in the Class Actions.  There is not privity merely because Plaintiff may share some ideas about Smucker that were included on the Website. "[P]arallel legal interests alone, identical or otherwise, are not sufficient to establish privity, or to bind a plaintiff to a decision reached in another case involving another plaintiff." (*Id.*)  In *Favish v. Office of Indep. Counsel*, 217 F.3d 1168, 1171 (9th Cir. 2000), the court held that collateral estoppel did "not apply" because a lawyer was not in privity with his client for purposes of collateral estoppel due simply to their shared "interest," which was "insufficient to create privity." (*Id.*)

V.    **THE COURT SHOULD ISSUE SANCTIONS AGAINST PLAINTIFF FOR SMUCKER'S COSTS IN OPPOSING THIS BASELESS MOTION**

The Court may award sanctions for a frivolous motion under Local Rules 11-9 and 83-7, 28 U.S.C. § 1927 and its inherent power.  (*Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001);  *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997); *In re Girardi*, 611 F.3d 1027, 1060-61 (9th Cir. 2010).)  Under Section 1927 and the Local Rules, a party or attorney may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred as a result of their frivolous filings.  Plaintiff's Motion was frivolous and made in bad faith.  It is devoid of merit, both procedurally and substantively, and appears designed

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

to maximize the burden on Smucker, whose opposition to class certification was scheduled to be due the same day as this opposition.

Indeed, Plaintiff's Motion presents arguments that by Plaintiff's own admissions were wasteful.  For example, Plaintiff acknowledges in its Motion that the traditional basis for an injunction is not applicable under the basis which it is seeking to enjoin the Ohio Action (Mot. 4:21-5:5, 13:8-9), but then proceeds to set forth over eight pages of analysis about it anyways.  (Mot. 13-21.)  This wastes the Court's time in reviewing, Smucker's time in researching and responding, and its own clients' resources by making irrelevant arguments.  Plaintiff does the same thing with respect to vexatious intent—acknowledging that Smucker's conduct has not risen to the level of vexation to warrant an injunction (Mot. 12:15-16), but proceeding through the analysis anyways (Mot. 3-4), again wasting the Court's time, and forcing Smucker on short notice to respond and waste resources researching and briefing these irrelevant issues.  Smucker respectfully requests that the Court sanction Plaintiff in the amount of at least $50,000,[15] representing Smucker's costs incurred in opposing this baseless Motion.  (Rothstein Decl. ¶ 6.)

## VI.    CONCLUSION

Plaintiff's Motion is not a proper vehicle, and presents no proper basis, to enjoin the Ohio Action—a separate lawsuit in a separate state against a third party for six claims not at issue in this action.  There are no "extraordinary" circumstances to justify enjoining the Ohio Action, which does not interfere with the jurisdiction of the Court here.  For all of the foregoing reasons, Smucker respectfully requests that the Court deny the Motion, and grant sanctions against Plaintiff in the amount of at least $50,000.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

---

[15] Smucker reserves the right to supplement this request with time incurred in attending any hearing on this Motion.

Respectfully submitted,

Dated: May 13, 2013                    Winston & Strawn LLP

                                       By:    /s/ Jason C. Hamilton
                                              Neal R. Marder
                                              Ronald Y. Rothstein
                                              Jason C. Hamilton
                                              Attorneys for Defendant
                                              THE J.M. SMUCKER COMPANY

OPPOSITION TO MOTION FOR ORDER ENJOINING DEFENDANT FROM PROSECUTING COLLATERAL
LITIGATION AGAINST HER COUNSEL